# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOVELL BURTON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ZERO WASTE SOLUTIONS, et al.,<br><br>　　　　　Defendants. | CASE NO. 1:15-cv-01562-LJO-MJS<br><br>**ORDER VACATING APRIL 14, 2016, FINDINGS AND RECOMMENDATIONS;**<br><br>**AND**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS WITHOUT LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF NOS. 10, 12)**<br><br>**FOURTEEN-DAY (14) OBJECTION DEADLINE** |

　　　　Plaintiff is proceeding pro se and in forma pauperis in this employment discrimination and retaliation action filed on October 14, 2015. On February 23, 2016, the Court dismissed Plaintiff's first amended complaint and directed Plaintiff to file a second amended complaint within thirty days. (ECF No. 9.) When Plaintiff failed to file an amended pleading, the undersigned issued Findings and Recommendations to dismiss this action without prejudice for failure to comply with a court order and failure to prosecute. (ECF No. 10.) Immediately following this recommendation, Plaintiff filed a

second amended complaint. (ECF No. 12.) Accordingly, the undersigned will vacate the April 14, 2016, Findings and Recommendations and screen the second amended complaint.

## I. SCREENING REQUIREMENT

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff brings this employment discrimination and retaliation action against Zero Waste Solutions ("Zero Waste"), Carmen Rodriguez ("Carmen R."), and Rigo Rodriguez ("Rigo R.").[1]

Plaintiff is an African-American man who worked as a custodian for Zero Waste for over ten years. Plaintiff last worked at the Robert E. Coyle Federal Courthouse ("the Courthouse") in Fresno, California.

---

[1] Rigo Rodriguez is unrelated to Carmen Rodriguez.

In 2015, Carmen R. became Plaintiff's supervisor. Plaintiff had a lot of (unspecified) problems with Carmen R. in the past, and he believes that her appointment to a supervisory position "gave her the authority to do what she wanted to do."

In March 2015, Rigo R. was assigned to work at the Courthouse as a manager. Soon thereafter, Rigo R. gave Plaintiff a "time-slotted work schedule," which Plaintiff objected to and refused to sign. Because of this, Plaintiff was written up for insubordination. Plaintiff felt "discriminated against and singled out because [he] was the only person that got a … time slotted schedule."

Carmen R. then "manipulated [Rigo R.] to stay on [Plaintiff] and write [him] up." As a result, Plaintiff was written up five more times in less than three months, and on June 26, 2015, Plaintiff was terminated from his employment. Plaintiff has text messages stating that Carmen R and Rigo R. "were after him."

Plaintiff complained about this treatment to union representatives, but Plaintiff was told to "just do your job."

Plaintiff claims that he was discriminated against because of his race and sex and retaliated against in violation of Title VII of the Civil Rights Act. Plaintiff also asserts that he was wrongfully terminated. He seeks damages and/or job reinstatement.

**IV.   ANALYSIS**

    **A.   Title VII Claims**

Title VII makes it "an unlawful employment practice for an employer" to "discriminate against any individual with respect to" the "terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A disparate treatment claim must be supported by direct evidence of discrimination, or may instead be evaluated under the burden-of-proof-and-production analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See, e.g., Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (applying McDonnell Douglas framework to Title VII discrimination claim).

3

### 1. Exhaustion Requirement

As a threshold matter, Title VII has exhaustion requirements that must be met prior to filing a court action. 42 U.S.C.§ 2000(e) et seq. A person seeking relief under Title VII must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice, or, if the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). If the EEOC does not bring suit based on the charge, the EEOC will issue a "right to sue letter." 42 U.S.C. § 2000e-5(f)(1). Once a person receives this letter, he has 90 days to file suit. 42 U.S.C. § 2000e-5(f)(1). The Court informed Plaintiff of this exhaustion requirement. Nevertheless, Plaintiff has not offered any indication that he exhausted his administrative remedies prior to filing this action.

### 2. Race or Sex Discrimination

To establish a prima facie case of discrimination based on gender/sex or race, Plaintiff must show that he is a member of a protected class; that he was qualified for his position or was performing satisfactorily; that he experienced an adverse employment action; and that similarly situated individuals outside his protected class were treated more favorably, or that some other circumstances surrounding the adverse employment action give rise to an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847 (9th Cir. 2004); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

As with his original complaint and first amended complaint, Plaintiff's operative pleading does not state a claim for either race or sex discrimination. Though Plaintiff alleges that he is an African-American man and that he was fired, he asserts no facts that would give rise to an inference that his termination was because of either his race or sex. Plaintiff was previously informed that he would be given one last opportunity to amend this claim. Having failed to include any additional details that would support a

claim that he was fired because he is a man and/or because he is African-American, the Court will recommend that this claim be dismissed without leave to amend.

### 3. Retaliation

To make out a prima facie case of retaliation under Title VII, a plaintiff must establish that he engaged in a protected activity, such as the filing of a complaint alleging racial discrimination, that his employer subjected him to an adverse employment action, and that a causal link exists between the protected activity and the adverse action. Freitag v. Ayers, 468 F.3d 528, 541 (9th Cir. 2006)

The McDonnell Douglas framework is also used to analyze claims of retaliation. To prove a retaliation claim, a plaintiff must first establish a prima facie case by showing that he engaged in protected activity, such as opposing unlawful discrimination or making a charge of employment discrimination; that he was thereafter subjected to a materially adverse action; and that there was a causal connection between the adverse action and his protected activity. See Surrell v. California Water Serv. Co., 518 F.3d 1097, 1107-08 (9th Cir. 2008).

To establish causation, a plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). The causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [plaintiff] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987). "[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000).

As with the previous iterations of the pleading, the second amended complaint satisfactorily alleges a materially adverse action (six write-ups in three months and then termination from Plaintiff's job), but it does not describe the protected activity or allege a causal connection between any protected activity and the adverse action. Though Plaintiff claims that he reached out to union representatives regarding the Defendants' conduct, he does not allege that the Defendants were aware of this complaint and that they acted in response to the complaint. Having failed to assert allegations to support this claim despite three opportunities to do so, the Court will recommend that this claim also be dismissed without leave to amend.

### 4. Hostile Work Environment

A hostile work environment is one that is permeated with discriminatory intimidation, ridicule, and insult, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65-67 (1986)).

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

Construing Plaintiff's second amended complaint as asserting a claim for hostile work environment, the Court finds that none of the conduct described is sufficiently "severe or pervasive" for purposes of a Title VII claim. As one court in the Northern District of California has described, "[s]uccessful claims of hostile work environment include harsh and, generally, repetitive verbal abuse." Lockett v. Bayer Healthcare, 2008 WL 624847, at *9 (N.D. Cal. Mar. 3, 2008) (citing Kang v. U. Lim Am., Inc., 296 F.3d

810, 817 (9th Cir. 2002) (finding that a Korean plaintiff suffered national origin harassment where the employer verbally and physically abused the plaintiff because of his race); Nichols v. Azteca Rest. Enters., 256 F.3d 864, 872-73 (9th Cir. 2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day); Anderson v. Reno, 190 F.3d 930 (9th Cir. 1999) (finding a hostile work environment where a supervisor repeatedly referred to the employee as "office sex goddess," "sexy," and "the good little girl" and where he humiliated the employee in public by drawing a pair of breasts on an easel while the employee was making a presentation and then told the assembled group that "this is your training bra session," and where the employee received vulgar notes and was patted on the buttocks and told she was "putting on weight down there"); Draper v. Coeur Rochester, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where plaintiff's supervisor made repeated sexual remarks to her, told her of his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and asked over a loudspeaker if she needed help changing her clothes).

Here, the Defendants' conduct falls far short of the conduct described in numerous Ninth Circuit opinions where no hostile work environment was found. See Manatt v. Bank of Am., 339 F.3d 792 (9th Cir. 2003); Vasquez, 349 F.3d at 642-44 (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea"); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1031, 1036-37 (9th Cir. 1990) (affirming the district court's decision that no reasonable jury could have found a hostile work environment

despite allegations that the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino)). For instance, in Manatt v. Bank of America, the plaintiff, who was a Chinese American, overheard a number of conversations in which fellow employees used the phrase "China man" and referred to "communists" and "rickshaws." 339 F.3d at 795. She was mocked by her coworkers, who "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." Id. She also was told that her pronunciation of the word "Lima" was "ridiculous," was asked to repeat the pronunciation for others to hear, and had her co-workers explain her pronunciation by saying "that's because she's a China woman." Id. at 795-96. While the Ninth Circuit said it was "troubled" by the comments and "racially offensive" acts of the plaintiff's coworkers, given that the incidents occurred only a few times over two and a half years and were directed at her only rarely, it found that the actions of the plaintiff's coworkers generally fell into the "simple teasing" and offhand comments" category of non-actionable discrimination because it was not severe or pervasive enough to alter the conditions of her employment. Id. at 798-99. Accordingly, the Ninth Circuit upheld the district court's grant of summary judgment in favor of the defendant. Id. at 795.

For these reasons, the Court concludes that, to the extent that the pleading can be construed as asserting a claim for hostile work environment, the claim must be dismissed for failure to state a claim.

### B. Supplemental Jurisdiction

Supplemental jurisdiction over state claims exists when a federal claim is sufficiently substantial to confer federal jurisdiction, and there is "a common nucleus of operative fact between the state and federal claims." Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citing Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir. 1991)); see

also 28 U.S.C. § 1367. This Court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367.

Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right. City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Amer. v. Gibbs, 383 U.S. 715, 726 (1966); Maltzman v. Friedman, 103 F.3d 139 (9th Cir. 1996) ("the doctrine of supplemental jurisdiction is a flexible one, giving a district court the power to exercise supplemental jurisdiction over a claim and the discretion whether to exercise such jurisdiction"). When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Gibbs, 383 U.S. at 726. Although the Supreme Court later noted that such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," it also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)

Because Plaintiff does not state a federal claim, the undersigned will recommend that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims.

### V.  CONCLUSION AND ORDER

Based on the foregoing, it is HEREBY ORDERED that the April 14, 2016, Findings and Recommendations (ECF No. 10) are VACATED; and

It is HEREBY RECOMMENDED that:

1. This action be DISMISSED without leave to amend for failure to state a claim;
2. The Court DECLINE to exercise supplemental jurisdiction over any state law claims; and
3. This case be CLOSED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 27, 2016              /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE

10